IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re: | Case No. 17-23386-GLT |
| | Chapter 12 |
| JAMES S. OLAYER, | |
| *Debtor.* | |
| | |
| UNITED STATES OF AMERICA, | Related to Dkt. No. 15 |
| *Movant,* | |
| v. | |
| JAMES S. OLAYER, | |
| *Respondent.* | |

## MEMORANDUM OPINION

Counsel:   Brian C. Thompson and Brent Lemon for the Debtor, James S. Olayer
Paul E. Skirtich and Jill Locnikar for the Movant, United States of America

This matter came before the Court upon the *Motion for Relief from Automatic Stay* filed by the United States through the U.S. Department of Agriculture Farm Service Agency ("FSA").[1] FSA seeks *in rem* relief under 11 U.S.C. § 362(d)(4)(B) to pursue a foreclosure sale of real property located at 2799 Wampum Mt. Air Rd., New Galilee, Pa. ("Property"), arguing that the Debtor, James S. Olayer, engaged in a scheme to delay, hinder, or defraud it by filing five bankruptcy petitions affecting the Property over the past twenty-one years.[2] Alternatively, the FSA argues that the totality of the circumstances establish cause to lift the stay under 11 U.S.C. §

---

[1]   Dkt. No. 15 ("Motion").

[2]   Id. at ¶¶ 32–33, 4.

362(d)(1).[3] The Court concludes that *in rem* relief is not warranted and "cause" for relief exists under section 362(d)(1) only to the extent that Olayer failed to maintain adequate insurance coverage on the Property.

## I.

The Property consists of a 110-acre farm with a brick home and is valued at $246,573.[4] FSA is Olayer's primary secured creditor, holding a judgment in the amount of $65,712.54.[5] The Property is also encumbered by a first mortgage lien held by Mahoning Consumer Discount Co. ("MCDC") in an unknown amount[6] and a tax lien of $28,627.57 held by the Lawrence County Tax Claim Bureau ("Tax Bureau").[7]

To understand FSA's motivations, a brief review of the agency's past interactions with Olayer is necessary. Olayer first petitioned for bankruptcy relief under chapter 12 of title 11 of the U.S. Code on March 5, 1996, but the case was dismissed just four months later.[8] At the time, FSA claimed it was owed $170,350.86.[9] A second bankruptcy petition was filed in

---

[3] Id. at ¶ 42.

[4] *Response to Creditor United States of America Motion for Relief from the Automatic Stay*, Dkt. No. 30 ("Response") at ¶ 4 (admitting ¶ 4 of the Motion); Sched. A/B, Dkt. No. 28 at 1.

[5] Response at ¶ 5 (admitting ¶ 5 of the Motion).

[6] Sched. D, Dkt. No. 28 at 1–2.

[7] The Debtor's schedules suggest the total amount of the real estate tax obligation is $32,243.37. See Schedule D [Dkt. No. 28] (filed on 9/21/17). In its motion, FSA contends that $28,627.57 is owed to the taxing authorities and it submitted an exhibit showing an arrearage in that amount as of August 9, 2017. The Debtor admitted this allegation in his Response. For the purpose of this Opinion, the Court will use the $28,627.57 figure since it was acknowledged by each of the parties.

[8] In re Olayer, No. 96-21126 (Bankr. W.D. Pa. Mar. 5, 1996), Dkt. Nos. 1, 32.

[9] Claim No. 5, In re Olayer, No. 96-21126 (Bankr. W.D. Pa. Apr. 29, 1996).

November 1996.[10] After Olayer failed to file his chapter 12 plan, the Court granted his request for a voluntary dismissal of the case in May 1997.[11]

In February 2000, FSA initiated a mortgage foreclosure action against Olayer in the U.S. District Court for the Western District of Pennsylvania ("District Court").[12] This action prompted Olayer to commence his third bankruptcy case on April 24, 2000, staying the foreclosure proceeding.[13] When a payment under Olayer's *Amended Reorganization Plan dated August 29, 2001* became ten months overdue, FSA obtained an order dismissing the bankruptcy case.[14]

FSA initiated a second mortgage foreclosure action against Olayer in the District Court on September 19, 2007 and was awarded summary judgment in the amount of $210,276.24 plus continuing interest.[15] Olayer appealed the ruling, but the Third Circuit Court of Appeals ("Third Circuit") affirmed the decision.[16] Olayer's petition for a rehearing *en banc* was also denied.[17]

---

[10]    In re Olayer, No. 96-26033 (Bankr. W.D. Pa. Nov. 11, 1996), Dkt. No. 1.

[11]    In re Olayer, No. 96-26033 (Bankr. W.D. Pa. May 30, 1997), Dkt. No. 25.

[12]    *Complaint in Mortgage Foreclosure*, United States of America v. Olayer, No. 2:00-cv-00243 (W.D. Pa. Feb. 3, 2000), Dkt. No. 1.

[13]    In re Olayer, No. 00-23083 (Bankr. W.D. Pa. Apr. 24, 2000).

[14]    In re Olayer, No. 00-23083, Dkt. No. 136 at ¶ 6; Dkt. No. 140.

[15]    *Memorandum Opinion and Order of Court*, United States of America v. Olayer, No. 2:07-cv-01256 (W.D. Pa. Oct. 16, 2008), Dkt. No. 25 at 11

[16]    *Opinion*, United States of America v. Olayer, No. 08-4581 (3d Cir. May 26, 2009).

[17]    See *Petition for Panel Rehearing with Suggestion for Rehearing* En Banc, United States of America v. Olayer, No. 08-4581 (3d Cir. Mar. 9, 2010).

FSA scheduled a U.S. Marshal's sale of the Property for March 17, 2010.[18] Olayer filed a motion with the Third Circuit to stay the sale, but this was denied as well.[19] Olayer then filed his fourth bankruptcy petition on March 16, 2010, thereby staying the sale.[20]

After nearly seven years, Olayer received a discharge in the fourth bankruptcy case.[21] Although the reorganization plan paid out $89,184.96 to FSA,[22] its confirmation[23] depended upon an agreement with FSA to accept payments outside the plan, including three annual installments of $21,795 each beginning on March 1, 2016, and a payment of $75,000 from the Estate of Sandra Rae Olayer Dodds, Olayer's deceased ex-wife.[24] Olayer failed to pay any of the annual installments, though it appears FSA received the required payment from Ms. Dodds's estate.[25] In light of the missed payments, FSA recommenced foreclosure proceedings and scheduled a U.S. Marshal's sale for August 24, 2017.[26] Olayer then filed his fifth bankruptcy petition in the present case on August 22, 2017, thereby staying the scheduled sale.[27]

---

[18] See *Verification of Service of Notice of Marshal Sale*, United States of America v. Olayer, No. 2:07-cv-01256 (W.D. Pa. Aug. 6, 2009), Dkt. No. 36.

[19] *Order*, United States of America v. Olayer, No. 08-4581 (3d Cir. Mar. 10, 2010).

[20] In re Olayer, No. 10-21763 (Bankr. W.D. Pa. Mar. 16, 2010), Dkt. No. 1.

[21] *Order of Discharge*, In re Olayer, No. 10-21763 (Bankr. W.D. Pa. Dec. 20, 2016), Dkt. No. 357.

[22] In re Olayer, No. 10-21763, Dkt. No. 355.

[23] *Order of Court Confirming Plan*, In re Olayer, No. 10-21763 (Bankr. W.D. Pa. Feb. 25, 2015), Dkt. No. 317.

[24] *Stipulation*, In re Olayer, No. 10-21763 (Bankr. W.D. Pa. Feb. July 31, 2014), Dkt. No. 296 at ¶ C(1).

[25] Dkt. No. 15 at ¶ 30 ("It should be noted that the last payment made during Debtor's fourth bankruptcy case was made by Debtor's ex-wife's estate, not Debtor."); Response at ¶ 30.

[26] Response at ¶ 8 (admitting ¶ 8 of the Motion).

[27] Dkt. No. 1.

Olayer admits he has failed to pay taxes on the Property since 2010 and that his fifth bankruptcy petition additionally canceled a tax sale previously scheduled for September 2017 by the Tax Bureau.[28] As of August 8, 2017, Olayer owed the Tax Bureau $28,627.57 in back taxes.[29] FSA also avers it has no proof that the Debtor has insured the Property.[30] Olayer did not respond to this averment or provide record proof of insurance.[31]

After a hearing on the motion, the Court took the matter under advisement to review the relevant authorities. The Court has jurisdiction under 28 U.S.C. § 157(b)(2)(G) and § 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408(1).

## II.A.

FSA bears the burden of proof to show it is entitled to *in rem* relief from the stay.[32] Section 362(d)(4)(B) mandates relief "if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property."[33] The mere existence of "[m]ultiple bankruptcy filings do[es] not alone justify relief" unless they are part of such a scheme.[34] Strategically timing a bankruptcy to stay or cancel foreclosure proceedings can be a legitimate tactic within a debtor's arsenal, but it evokes bad faith where a debtor commences a bankruptcy case "without the ability or the intention to reorganize."[35]

---

[28]    Response at ¶ 28 (admitting ¶ 28 of the Motion).

[29]    Id; see also Ex. B, Dkt. No. 15 at 4.

[30]    Motion at ¶ 29.

[31]    Response at ¶ 29 (declining to respond to ¶ 29 of the Motion).

[32]    In re Mazza, 2015 WL 5729262 at *4 (E.D. Pa. Sept. 30, 2015).

[33]    11 U.S.C. § 362(d)(4)(B).

[34]    In re Gray, 558 Fed. Appx. 163, 166 (3d Cir. Mar. 7, 2014).

[35]    Mazza, 2015 WL at *5 (citation omitted).

In the past, this Court has suggested that serial filings compounded by a lack of payments, "highly-questionable plan," and "tag team" approach to individual filings by a husband and wife may warrant *in rem* relief.[36]

FSA relies on In re Mazza, 2015 WL 5729262 (E.D. Pa. Sept. 30, 2015), to argue that Olayer engaged in a scheme to delay or hinder its efforts because he timed his filings to thwart foreclosure, had three failed cases and did not make payments under the stipulation in the fourth, and requested an extension to complete his plan and schedules in the present case.[37] In Mazza, the debtor and her husband separately filed four bankruptcy petitions within fourteen months, each staying foreclosure proceedings on their real property.[38] Two were dismissed due to the failure to file required documents such as statements of monthly income and financial affairs, and two were dismissed for failure even to pay the filing fee.[39]

Had the FSA sought *in rem* relief at the outset of Olayer's fourth bankruptcy case, it is quite possible the Court would have granted the request. Olayer's first two bankruptcy cases failed to last more than six months, and he was unable to satisfy his plan obligations in the third. After several appellate maneuvers through the Third Circuit yielded nothing more than a two-and-a-half-year delay of the execution proceedings, Olayer was back in this Court with his fourth voluntary petition and an outstanding obligation to FSA which had grown to $217,433.53.[40]

---

[36]     In re Kohar, 525 B.R. 248, 257 n.7 (Bankr. W.D. Pa. 2015).

[37]     Dkt. No. 15, ¶¶ 34–37.

[38]     Mazza, 2015 WL at *1–2.

[39]     Id.

[40]     In re Olayer, No. 10-21763, Dkt. No. 324.

But the current motion requires a determination as to whether the fourth bankruptcy case is part of a "scheme to delay, hinder, or defraud" creditors. After examining the events that transpired, the Court concludes that Olayer's conduct did not sink to the same level of disregard the Mazza debtors showed. Although his 2010 case spanned more than six years and involved eleven different plans,[41] Olayer eventually achieved confirmation and obtained a discharge.[42] This relentless pursuit of a solution stands in stark contrast to the Mazza debtors, who were unable to pay the filing fee or produce a completed petition at the outset of their case. Most significantly, FSA received a substantial payout during the 2010 bankruptcy, notwithstanding Olayer's failure to make several payments outside of the confirmed plan.

The progress made during the 2010 bankruptcy case cannot be ignored. The balance presently outstanding on the FSA judgment is nearly 70% less than the amount owed when the fourth case was commenced. For this reason, the Court cannot conclude that Olayer lacked the requisite intent to reorganize while pursuing his fourth bankruptcy case.

FSA also argues that Olayer has not prosecuted the present case in good faith because he requested an extension to file his schedules and did not file a plan, citing In re Danley, 540 B.R. 468 (Bankr. M.D. Ala. 2015).[43] In Danley, the debtors filed four bankruptcy petitions over seven-and-a-half years, three of which stayed active foreclosure proceedings.[44] The first was

---

[41] In re Olayer, No. 10-21763 (Bankr. W.D. Pa. 2010), Dkt. Nos. 23, 58, 83, 143, 157, 218, 244, 261, 269, 284, 296. FSA stated that Olayer filed thirteen plans during this time, Dkt. No. 15 at ¶ 15, but upon reviewing the docket, the Court finds that the plans proposed at Dkt. Nos. 218 and 284 are the same as those proposed at Dkt. Nos. 213 and 281, respectively, save altered dates in the headings.

[42] In a series of circumstances that demonstrates the axiom that "no good deed goes unpunished," the Court recognizes that Olayer's 2010 bankruptcy case was on the verge of dismissal until the debtor's counsel, the chapter 12 trustee, and FSA negotiated for a suitable means for the case to complete. Without their diligence and persistence, it is likely the fourth case might have had a much different outcome.

[43] Dkt. No. 15 at ¶ 35 (citing In re Danley, 540 B.R. 468, 476–77 (Bankr. M.D. Ala. 2015).

[44] Danley, 540 B.R. at 470–72. Ms. Danley filed the third case individually. Id. at 472.

dismissed for failure to file monthly operating reports, and the second was dismissed for failure to make post-confirmation payments or pay quarterly fees.[45] The third case was voluntarily dismissed on the debtor's motion after a plan could not be confirmed over the creditors' objections.[46] The court found bad faith in all three, noting Ms. Danley should have known the third case was "hopeless" as a chapter 13 endeavor because she had nearly $900,000 of debt and only $3,000 of monthly income.[47] The court also found that the debtors' late-filed schedules, statement of financial affairs, and payment advices—in addition to their failure to disclose their gross income—constituted bad faith in the fourth case.[48]

      Olayer's conduct is again distinguishable. In the present case, he timely filed a motion to extend the deadline to file his required documents.[49] The Court granted the request and Olayer completed the petition before the extended deadline lapsed.[50] He also timely filed his chapter 12 plan.[51] Because *in rem* relief is extraordinary and imposes consequences beyond the contours of the present bankruptcy case, it is not to be taken lightly.[52] After examining the circumstances of this case and finding that FSA failed to sustain its burden, the request for relief under section 362(d)(4) is denied.

---

[45]     Id. at 471. The debtors did not even pay their own attorney in the second case, causing him to withdraw.

[46]     Id. at 472.

[47]     Id. at 477–78.

[48]     Id. at 478–79.

[49]     Dkt. No. 24.

[50]     Dkt. Nos. 28, 33.

[51]     Dkt. No. 355.

[52]     See In re Danley, 540 B.R. at 476.

Having concluded that there is insufficient proof to justify *in rem* relief at this stage, the Court cautions that it may revisit the matter under the appropriate circumstances if Olayer is shown to act in bad faith through his subsequent conduct. Despite his prior acknowledgement and consent to the amounts owed to FSA,[53] Olayer (acting *pro se*) subsequently disputed the debt in his prior bankruptcy case, suggesting that FSA "filed false security [and] altered official government documents and presented them as FACT."[54] He further claimed his prior bankruptcy case "should have been complete back in 2012" and argued that "I do not owe that money."[55] Aided by the assistance of new legal counsel, Olayer has yet to challenge the nature and extent of his obligations to FSA in the current bankruptcy case, but to the extent he mounts a collateral attack on the March 2015 stipulation, it will have a bearing on the Court's perception of his good-faith efforts to reorganize.

**II.B.**

FSA also bears the initial burden of showing it is entitled to relief for cause under 11 U.S.C. § 362(d)(1).[56] If FSA establishes cause, the burden shifts to Olayer to show FSA's interest is adequately protected without relief from the stay.[57] "Cause" is undefined in the statute, so courts must determine it "based on the totality of the circumstances in each particular case."[58] Courts "may consider the policies reflected in the bankruptcy code, and the interests of the debtor,

---

[53]   See *Stipulation*, note 24 at ¶ F.

[54]   In re Olayer, No. 10-21763 (Bankr. W.D. Pa.), Dkt. No. 335.

[55]   Id., Dkt. Nos. 335, 343.

[56]   In re Stuart, 402 B.R. 111, 122 (Bankr. E.D. Pa. 2009).

[57]   Id.

[58]   In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997).

other creditors and any other interested parties" to determine when cause exists.[59] Various factors affecting this determination have been identified, though none are dispositive nor may they be relevant to every case.[60] To weigh the debtor's interests against the movant's, "[c]ourts consider three factors: (1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted."[61]

If a creditor is secured, a slim and eroding equity cushion is sufficient to establish cause.[62] In determining whether an equity cushion is substantial enough to constitute "adequate protection" absent any other action by the debtor, courts should consider "the size of the equity cushion (sometimes expressed as a percentage of fair market value); the rate at which the cushion will be eroded; whether periodic payments are to be made to prevent or mitigate the erosion of the cushion; and, if the property is to be liquidated, the likelihood of a reasonably prompt sale."[63]

FSA argues that cause exists in the present case under factors this Court identified In re Kohar, 525 B.R. 248 (Bankr. W.D. Pa. 2015).[64] There, the Court held that cause existed because the debtor "lack[ed] equity in the property and . . . failed to show a reasonable possibility of a successful reorganization within a reasonable time period."[65] In reaching this determination,

---

[59] In re Chatkin, 465 B.R. 54, 60 (Bankr. W.D. Pa. 2012) (quoting In re Chan, 355 B.R. 494, 499 (Bankr. E.D. Pa. 2006)).

[60] See, e.g., Chan, 355 B.R. at 499 (citing In re Sonnax Indus., Inc., 907 F.2d 1280 (2d Cir. 1990) (identifying a twelve-factor test); Id. (quoting In re Granati, 271 B.R. 89, 93 (Bankr. E.D. Va. 2001)) (identifying a four-factor test).

[61] In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993).

[62] In re Winslow Ctr. Assocs., 32 B.R. 685, 687 (Bankr. E.D. Pa. 1983).

[63] In re Liona Corp., N.V., 68 B.R. 761, 766 (Bankr. E.D. Pa. 1987).

[64] Dkt. No. 15 at ¶ 40 (citing Kohar, 525 B.R. 248, 256 (Bankr. W.D. Pa. 2015)).

[65] Kohar, 525 B.R. at 257.

the Court cited several factors: a long time had elapsed without "meaningful payment" on the mortgage, the debtors had engaged in an "abusive use of the bankruptcy process and lack of good faith efforts," and there was no adequate protection for the mortgagee.[66] Although the debtors filed eight bankruptcy petitions in nine-and-a-half years, the Court found bad faith from their conduct in the eighth case as well as the most recent prior two.[67] In the sixth case, Ms. Kohar made a court-ordered payment of $682.50 only after the mortgagee and chapter 13 trustee filed affidavits of default, resulting in the dismissal of her case—and then filed a motion to vacate the dismissal order disingenuously claiming she had made the payment on time.[68] In the seventh case, Mr. Kohar failed to make court-ordered adequate-protection payments, did not attend a conciliation conference, and appealed the dismissal of his case without filing a brief or posting a bond to keep the appeal in place.[69] In the eighth case, Ms. Kohar was granted the right to pay her filing fee in installments but failed to make the first installment payment.[70] The property was also underwater with an optimistic $150,000 valuation securing over $200,000 of debt, and the debtors failed to insure it or pay real-estate taxes.[71]

As an initial matter, Olayer has not produced any evidence that the Property is currently insured. The failure to maintain adequate insurance to protect the value of estate assets

---

[66] Id.

[67] Id. at 256 ("The Debtor in the present case has continued to demonstrate a cavalier attitude, or worse, with respect to the Court's orders."). The Debtors filed the first four cases jointly but the second four individually. See id. at 255.

[68] Id. at 254–55.

[69] Id. at 255.

[70] Id. at 256.

[71] Id. at 256–57.

is a breach of the debtor's fundamental obligations,[72] needlessly exposes the estate to the risk of a catastrophic loss, and may constitute sufficient cause for stay relief.[73] For this reason, the Court conditionally grants relief from the stay in favor of FSA. Although Olayer should have previously corrected this deficiency in advance of the hearing on the motion, the Court may reconsider this portion of its ruling if he produces proof of adequate insurance coverage for the Property before the period specified under FED. R. BANKR. P. 4001(a)(3) expires.

There are several additional factors that may constitute a *prima facie* case establishing cause under § 365(d)(1). He failed to disclose the existence of an oil-and-gas lease on his bankruptcy schedules, nor did he report his alleged royalty income on Schedule I or in the statement of financial affairs.[74] Once the Court alerted Olayer's counsel to these omissions, it expected amended documents soon to follow. Because the deficiencies remain uncorrected despite the passage of several weeks, the Court now views this potential source of funding with a degree of skepticism and Olayer's candor and diligence is cast in a show of suspicion.[75] The plan Olayer filed on November 20, 2017 appears to rely on substantial payments from the lease's renewal and references current royalties from fifteen unitized acres,[76] but there is insufficient documentation

---

[72]  See, e.g., In re Dye, 502 B.R. 47, 56 n.11 (Bankr. M.D. Pa. 2013) ("To comply with their fiduciary duties to the estate, insurance on the property should be obtained.").

[73]  See, e.g., In re Crompton, 7 83 B.R. 800, 810–11 (Bankr. E.D. Pa. 1987) (requiring the debtors to maintain insurance payments to deem their mortgage adequately protected); Matter of Stagedoor, Inc., 32 B.R. 13, 13 (Bankr. W.D. Pa. 1983) (granting stay relief where the debtor defaulted on insurance premiums); In re Palacios, 2013 WL 1615790 at *3 (9th Cir. B.A.P. Apr. 15, 2013) ("A debtor's failure to insure property can be a basis to grant a secured creditor relief from stay under § 362(d)(1) for lack of adequate protection of its collateral.").

[74]  Dkt. No. 28.

[75]  Dkt. No. 38.

[76]  Dkt. No. 41.

Case 17-23386-GLT    Doc 42    Filed 11/22/17    Entered 11/22/17 16:34:59    Desc Main
                                Document      Page 13 of 14

supporting these disclosures. The Court is also troubled by Olayer's failure to make even partial payments toward his obligation under the stipulation agreement with FSA.[77]

The burden then shifts to Olayer to show FSA is adequately protected without relief from the stay. The sole argument Olayer provided in his response to this claim is that "by any reasonable calculation[,] there is a significant equity cushion based on the value of the property."[78] Accordingly, the Court turns to the Liona factors to determine whether this cushion is sufficient to adequately protect FSA's interest.

Olayer valued the Property at $246,573, and there is nothing in the record to dispute this assessment.[79] Three secured claims are asserted against the Property. The parties acknowledge that FSA holds a secured claim in the amount of $65,712.54[80] and the Tax Bureau is owed at least $28,627.57.[81] The record is currently devoid of any indication of the outstanding balance owed on the first mortgage held by MCDC.[82] Because FSA bears the burden of proof on the issue of the debtor's equity in the property, the Court will not attribute any amount to the MCDC claim for the purpose of this equity analysis absent additional evidence in the record.[83]

---

[77]  The Court notes that unlike the missed court-ordered payments in Kohar, Olayer did not directly violate a court order by failing to perform under the stipulation agreement. The Court incorporated this agreement as an additional term to the confirmed plan, but it did not directly order Olayer to make the payments. See *Addendum to Confirmation Order*, In re Olayer, No. 10-21763 (Bankr. W.D. Pa. Feb. 25, 2015), Dkt. No. 317.

[78]  Dkt. No. 30 at ¶ 42.

[79]  Sched. A/B, Dkt. No. 28 at 1.

[80]  Dkt. No. 15 at ¶ 5.

[81]  See fn. 7.

[82]  The Court takes judicial notice that at the commencement of Olayer's 2010 bankruptcy case, MCDC held a claim in the amount of $48,342.37. See Claim No. 4, In re Olayer, No. 10-21763 (Bankr. W.D. Pa. Aug. 17, 2010).

[83]  See 11 U.S.C. § 362(g).

Accordingly, there is approximately $97,955.91 of debt secured by a non-exempt Property value of $222,898, leaving an equity cushion of approximately 66%. In other words, despite the existence of a first mortgage for an unknown amount on the Property, FSA still enjoys a considerable equity cushion. The Tax Bureau's claim accrues interest at $160.61 per month,[84] while the district court awarded the FCA interest of $18.6737 per day.[85] There is no evidence in the record showing MCDC's interest rate. The Debtor is currently making no adequate protection payments, and there is no evidence in the record showing how quickly a sale could be achieved in the event of a liquidation. Even so, the Court holds that size of the equity cushion meets Olayer's burden rebutting the need to lift the stay despite any cause FSA may have presently demonstrated, aside from the lack of insurance.

### III.

For the reasons set forth above, FSA's *Motion for Relief from Automatic Stay* is **GRANTED** in part and **DENIED** in part.

A separate Order will issue.

Date: November 22, 2017

                                                GREGORY L. TADDONIO
                                                UNITED STATES BANKRUPTCY JUDGE

<u>Case administrator to serve:</u>
Debtor
Debtor's counsel
FSA
FSA's counsel
US Trustee

---

[84] Ex. B, Dkt. No. 15-3 at 4.

[85] *Memorandum Opinion and Order of Court*, <u>United States of America v. Olayer</u>, No. 2:07-cv-01256 (W.D. Pa. Oct. 16, 2008), Dkt. No. 25 at 10.